THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENJAMIN BARRY KRAMER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:15-cv-420-JPG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Defendant. | ) |

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on the motion of the defendant United States of America ("Government") to dismiss this action in which plaintiff Benjamin Barry Kramer seeks the return of some or all of the property seized in connection with his criminal forfeiture (Doc. 58). Kramer has responded to the motion (Doc. 62).

**I.      Background[1]**

Kramer is an inmate at the United States Penitentiary Thompson in Thomson, Illinois. In the 1980s Kramer took part in a "vast enterprise which imported several hundred thousand pounds of marijuana into the United States." *United States v. Kramer*, 955 F.2d 479, 481 (7th Cir. 1992). In a fourteen-week jury trial before the Honorable James L. Foreman in 1988, Kramer was found guilty of conspiring to distribute marijuana and participating as a principal administrator, organizer, or leader in a continuing criminal enterprise ("CCE"). He was sentenced to life imprisonment without the possibility of parole on the CCE charge, along with a

---

[1] The following background has been gleaned from publicly-filed court documents, which the Court is permitted to consider when ruling on a Rule 12(b)(6) motion to dismiss. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Kramer's factual allegations contrary to those documents need not be accepted as true. *Polzin v. Gage*, 636 F.3d 834, 838 n. 1 (7th Cir. 2011) (*per curiam*) (Court may rely on documents properly considered to discount complaint's contrary factual allegations) (citing *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007); *Flannery v. Recording Indus. Ass'n of America*, 354 F.3d 632, 638 (7th Cir. 2004)).

forty-year sentence on the conspiracy charge to be served concurrently.[2] *See United States v. Lanier*, No. 87-cr-40070-JLF.[3]

As part of his judgment of conviction, Kramer was subject to a $60 million *in personam* forfeiture judgment.[4] To satisfy this judgment in part, as described later in this order, the Government sought forfeiture of Kramer's property—held by nominees[5] but actually owned by him when his money laundering activities began—as substitute property under 21 U.S.C. § 853(p). The nominees were the partners of LCP Associates, Ltd. ("LCP").[6] LCP had joined with another limited partnership, PPA, to form a joint venture to own and operate the Bell Gardens Bicycle Club ("Bicycle Club"), a card casino. Kramer's interest stemmed from the fact that LCP used proceeds belonging to Kramer and his cohorts[7] from their drug operations, disguised as a legitimate loan, to establish the Bicycle Club, and then used the Bicycle Club to launder money from those drug operations. At some point, Sam Gilbert arranged for third parties, including Michael Gilbert, to buy out Kramer's and his cohorts' interests in LCP by essentially paying off the "loan" and then transferring the interests in LCP to relatives. By that time, however, the Government had already acquired Kramer's interest in LCP by virtue of the

---

[2] In 1998, the Court vacated the forty-year conspiracy sentence, *see Kramer v. United States*, No. 97-cv-4117-JLF (S.D. Ill.), leaving the CCE life sentence in place.

[3] The case was redesignated as No. 87-cr-40070-JPG following Judge Foreman's retirement and reassignment of this case to the undersigned judge. The Court continues to use the original case number ending in -JLF to describe the orders entered before the redesignation.

[4] Kramer's codefendants were also subject to *in personam* forfeiture judgments: Randy Lanier for $60 million and Eugene Fischer for $30 million.

[5] Some of the partners held nominee interests in LCP Associates, Ltd. when the money laundering plans began while others were transferees of interests at later stages. For convenience, the Court refers to these partners as "nominees."

[6] Some of the partners held nominee interests in LCP when the money laundering plans began while others were transferees of interests in LCP at later stages. For convenience, the Court refers to these partners as "nominees."

[7] Kramer and his cohorts had formed a partnership called BTR Trust Investments to channel these funds through two other entities and finally to LCP.

relation back doctrine when Kramer first invested drug proceeds in LCP and the Bicycle Club.[8] At all relevant times, LCP had a 65% interest in the joint venture that owned the Bicycle Club, and PPA had a 35% interest. Thus, at the time the Government acquired rights in LCP, Kramer was the real owner of a fractional partnership interest in LCP, which had a fractional ownership interest in the joint venture that owned the Bicycle Club.[9]

The Bicycle Club was already in the possession of federal authorities by the time the Government sought to forfeit substitute property to satisfy Kramer's $60 million forfeiture judgment in this district. In a related criminal prosecution against Kramer, Michael Gilbert, and others in the Southern District of Florida, *United States v. Kramer*, No. 87-879-cr-ROETTGER, Kramer was convicted for his drug and racketeering activities and the Bicycle Club was forfeited. The Bicycle Club was seized by the United States Marshals Service ("USMS") and a trustee was assigned to continue its operations. The USMS kept the profits from the Bicycle Club, plus interest, in an asset forfeiture account.

In the process of finalizing the forfeiture, the Government had to contend with third-party

---

[8] The relation back doctrine, codified at 18 U.S.C. § 1963(c) and 21 U.S.C. § 853(c), essentially provides that all rights in property involved in crime vests in the Government at the moment the crime is committed, and the Government then holds a superior right to the property than a subsequent transferee. Only if the transferee later establishes he has an even superior right or that he is an innocent owner will the forfeiture be amended. *See* 18 U.S.C. § 1963(*l*); 21 U.S.C. § 853(n). Thus, by the time Michael Gilbert acquired Kramer's interest in LCP, the Government's had already acquired a superior interest in that property.

[9] In the past, the parties, this Court and others have not scrupulously described the nature of the property owned by Kramer, sometimes referring to it as the Bicycle Club, sometimes as part ownership in the Bicycle Club, and sometimes referring to it as an interest in LCP. The problem persists in the Government's pending motion. This imprecision has had serious consequences, as described in connection with a related criminal prosecution of Kramer in the Southern District of Florida. *See United States v. Gilbert*, 244 F.3d 888, 918, 921-24 (11th Cir. 2001) (noting jury verdict in a related case that purported to forfeit the Bicycle Club was invalid because, among other reasons, the Bicycle Club was not owned by Kramer but by the joint venture between LCP and PPA, of which Kramer only had a fractional interest). The Court attempts to be as precise and accurate as possible in this order.

claimants, namely, the current or former nominee partners of LCP.  The partner claimants can be divided into three groups.  The first, which the Court will call the Florida claimants, nominally held a 75.8325% partnership interest LCP.  They filed third-party claims to property purported to be forfeited in the related Florida criminal case.  The Florida claimants settled their claims with the Government in February 1991 by agreeing that they would forfeit some of their interest in LCP and some of the profit distributions from the Bicycle Club which they claimed by virtue of their membership in LCP.  As a result of the settlement agreement, the Government obtained forfeiture of 31.456275% of the partnership shares of LCP.

The second group of nominee partners of LCP, the California claimants, nominally held a 15% partnership interest in LCP.  They stipulated in August 1993 to forfeiture of their interests in LCP in settlement of a civil *in rem* forfeiture case, *United States v. Interests of M. Dale Lyon in LCP Assocs.*, No. 91-5148-ER.  As a result of the settlement agreement, the Government obtained forfeiture of 15% of the partnership shares of LCP, bringing its total LCP forfeited shareholding to 46.456275%.

The remaining 9.1675% LCP partnership interest nominally belonged to the third group of partners comprising Michael Gilbert, his family members, and a trust ("the Gilbert entities"). The Gilbert entities' interest in the Bicycle Club had originally been forfeited in the related Florida criminal prosecution, but in 1996, the Court of Appeals for the Eleventh Circuit reversed that forfeiture judgment.  *See United States v. Kramer*, 73 F.3d 1067, 1076 (11th Cir. 1996).[10] Thus, the Gilbert entities were the only nominee LCP partners whose interests remained potentially forfeitable after settlement with the Florida claimants and the California claimants.

---

[10] Kramer's reference to the Government's owning a 55% partnership interest in LCP refers to its total interest before the Eleventh Circuit Court of Appeals invalidated the forfeiture of Michael Gilbert's partnership interest in 1996.

4

Their interest totaled a 9.1675% partnership interest in LCP plus any profits from the Bicycle Club and interest due by virtue of this partnership interest.

The Government sought in this district in case No. 87-cr-40070-JLF to forfeit the Gilbert entities' interests in LCP as substitute property under 21 U.S.C. § 853(p) to be applied toward satisfying the monetary forfeiture penalties of Kramer and two of his codefendants.  On August 19, 1996, the Government applied for forfeiture of the "the property and assets of BTR Trust, LCP, and LCP's interest in the Bell Gardens Bicycle Club" to include only the interests of Kramer and his cohorts that were "held in the name of or by or through Michael Gilbert, Karen Gilbert, and the Michael Gilbert Irrevocable Family Trust," to be applied toward Kramer's $60,000,000 forfeiture judgment and his co-defendants' forfeiture judgments (No. 87-cr-40070-JLF, Doc. 719 at 8-9).  Although served with the application through his counsel, Kramer did not respond.  The Gilbert entities, on the other hand, objected to the forfeiture for a variety of reasons (No. 87-cr-40070-JLF, Docs. 730 & 731).

In May 1999, before the Court ruled on the Government's motion for an order of forfeiture of property held by the Gilbert entities, the Government sold for $5 million all of the partnership interest it owned at that time in LCP, that is, the 46.456275% partnership interest in LCP it had acquired from settlement with the Florida and California claimants but not including the 9.1675% interest held by the Gilbert entities.  Almost two years later, in March 2001, the Court of Appeals for the Eleventh Circuit ruled that the forfeiture judgment against Kramer in the related Florida criminal case was invalid.  *United States v. Gilbert*, 244 F.3d 888 (11th Cir, 2001).  However, the previously forfeited interests in LCP by the other LCP nominee owners remained in place because they were accomplished by settlement agreements that were unaffected by the Eleventh Circuit's reversal.

In the meantime, back in this district, the Government reached a settlement with the

Gilbert entities in August 2003 resolving the Gilbert entities' objections to the forfeiture. As explained in the Government's memorandum on the proposed settlement (No. 87-cr-40070-JLF, Doc. 857), the settlement generally allowed the Gilbert entities, except Michael Gilbert, to retain their partnership interest in LCP but forfeited some of the profit distributions (36.38%) from the Bicycle Club that the Gilbert entities claimed by virtue of their partnership in LCP. Kramer did not object to the proposed settlement.

On September 24, 2003, the Court entered a Judgment and Order of Forfeiture reflecting that settlement along with a Consent Decree ordering the terms of the settlement (No. 87-cr-40070-JLF, Docs. 873 & 874). Specifically, the Court ordered the following forfeited as substitute property:

> ALL THE PROFITS OF LCP ASSOCIATES, LTD., SEIZED OR RESTRAINED BY THE UNITED STATES MARSHALS SERVICE ATTRIBUTABLE TO THE OWNERSHIP INTEREST OF MICHAEL GILBERT IN LCP ASSOCIATES, LTD., AS OF THE TIME OF THE INITIAL SEIZURE OR RESTRAINT OF OWNERSHIP INTERESTS OR PROFITS OF LCP ASSOCIATES, LTD., PLUS ALL INTEREST EARNED THEREON, LESS THE AMOUNT OF $338,801.26.

(No. 87-cr-40070-JLF, Doc. 873 at 3). The upshot of this was that as of September 24, 2003, the Government received by forfeiture 36.38% of 9.1675% of the profits of LCP from the Bicycle Club that had been seized or restrained by the USMS, plus interest on those funds and less $338,801.26, all still subject to other third-party claims. This property was the only property the Government forfeited as a substitute asset. As of this time, the Government no longer held any partnership interest in LCP, for it renounced to the Gilbert entities, except Michael Gilbert, its claim to the last of its interests in LCP pursuant to the settlement agreement. Kramer did not appeal this judgment.

Notice of the forfeiture was published, and no third party filed a claim, so on November 24, 2003, the Court found the United States had clear title to the property forfeited on September

24, 2003 (No. 87-cr-40070-JLF, Doc. 880).  Kramer did not appeal that order.

In its motion to dismiss, the Government represents that nearly $2 million of the LCP profits forfeited by the Gilbert entities should be credited toward Kramer's $60 million forfeiture judgment.  However, Kramer has been informed by an official at the Bureau of Prisons that only $845.35 has been applied, leaving $59,999,154.65 still due.  Understandably, he is concerned.

## II.     Procedural History

Kramer filed this lawsuit in April 2015 seeking return of property under Federal Rule of Criminal Procedure 41(g).  The gravamen of his complaint was that the Government has not properly credited him for seized assets and that the value of his seized and sold interest in the Bicycle Club actually exceeded the $60 million forfeiture judgment in his criminal case.  According to Kramer, the United States owes *him* money, $18,102,038.16 to be exact, the amount of the alleged overcollection.  Noting that Rule 41(g) does not provide an avenue for a prisoner to obtain recovery of forfeited property or property that the Government no longer has in its possession, the Court dismissed Kramer's complaint with leave to replead.

Kramer has since filed the Amended Complaint.  Under a variety of theories, he asks the Court either (1) to find the forfeiture invalid and return the entirety of the forfeited property to him or (2) to value the forfeited property and return to him the value exceeding $60 million.

- In Counts 1 and 2, Kramer seeks to enforce or clarify the criminal forfeiture under 21 U.S.C. § 853(p)(2) through an accounting of the application of the forfeited substitute property to Kramer's criminal forfeiture judgment.  He claims that the forfeiture of his substitute property was invalid because the value of the substitute property was not determined before the forfeiture and because the substitute property was also tainted property subject to direct forfeiture as property derived from criminal activity.  He suggests that the Court has authority to order an accounting and return of his forfeited property and that Federal Rule of Criminal Procedure 32.2 gives the Court authority to amend the forfeiture order in light of these alleged flaws.  In Count 1 he seeks a return of all of his forfeited property, and in Count 2 he seeks return of the forfeited property that exceeds the value of his $60 million forfeiture judgment.

- In Counts 3 and 4, as he did in his original complaint, Kramer seeks the return of his

property pursuant to Federal Rule of Criminal Procedure 41(g), arguing that the Government is still in possession of the seized property and has not lawfully forfeited it for the reasons set forth in Counts 1 and 2.  In Count 3 he seeks a return of all of his forfeited property, and in Count 4 he seeks return of the forfeited property that exceeds the value of his $60 million forfeiture judgment.

- In Counts 5 and 6, Kramer asks the Court to exercise its equitable powers to return to him his forfeited property that could have been directly forfeited as property derived from criminal activity but which was instead forfeited as substitute property.  In Count 5 he seeks a return of all of his forfeited property, and in Count 6 he seeks return of the forfeited property that exceeds the value of his $60 million forfeiture judgment.

- Kramer brings Counts 7, 8 and 9 for damages under the Tucker Act, 28 U.S.C. § 1491(a)(1), for restitution/unjust enrichment, unlawful conversion and implied contract, respectively.  Acknowledging that district courts do not have jurisdiction to hear claims under the Tucker Act, Kramer asks the Court to transfer this action to the United States Court of Federal Claims, which has exclusive jurisdiction over Tucker Act claims.

- Count 10 asserts a claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), based on the conduct of Eduardo Gonzalez, former director of the USMS, and other agents of the USMS.  He alleges their conduct in taking profits from the Bicycle Club in excess of $60 million is an illegal exaction in violation of the Fifth Amendment Takings and Due Process Clauses.  He seeks the return of his interest in LCP and/or money damages.

- Count 11 is a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), because Gonzalez and other USMS agents retained profits from the Bicycle Club in excess of $60 million and gave them to non-owners of the property.

In its motion, the Government asks the Court to dismiss Kramer's claims or, in the alternative, for judgment on the pleadings or, in the alternative, for summary judgment, on a number of grounds.  First, it argues that the Court does not have jurisdiction to revisit the order of forfeiture entered in 2003 and not appealed by Kramer.  Second, it argues that, in fact, the value of the assets seized from Kramer does not come close to $60 million.  Third, it argues that Kramer is not entitled to damages regardless of the merits of his assertions.  And fourth, it argues that Kramer has not properly cited a basis for the Court's jurisdiction or the Government's waiver of its sovereign immunity from suit.

**III.**     **Analysis**

    A.     <u>Jurisdiction</u>

        1,     <u>Claims that Forfeiture was Invalid</u>

The Court begins, as it must whether raised by a party or not, with jurisdiction. To the extent Kramer asks the Court to invalidate the September 24, 2003, Judgment and Order of Forfeiture forfeiting the interest in the LCP profits held by Michael Gilbert as the nominee of Kramer and his cohorts, the Court lacks jurisdiction to revisit that order. Once a criminal forfeiture judgment is entered, it must be challenged on direct appeal or not at all. *Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007) (*per curiam*) (nothing the district court lacked jurisdiction over a collateral challenge under Rule 41(g) to a final order forfeiting substitute property). Kramer failed to appeal the September 24, 2003, Judgment and Order of Forfeiture, which conclusively determined and terminated his interest, through his nominees, in the substitute property, within ten days after it was entered, *see* Fed. R. App. P. 4(b)(1)(A) (2003).

He argues now that he could not have appealed that order because it did not forfeit *his* interest in LCP but only the Gilbert entities' interests. This argument ignores the fact that the Government's motion prompting the order specified that it was seeking only the interests of Kramer and his cohorts that were held "in the name of or by or through" the Gilbert entities (No. 87-cr-40070-JLF, Doc. 719 at 8-9). Their nominee interests held for Kramer and his cohorts' real interests were the only property in issue, and the only property the Court's September 24, 2003, Judgment and Order of Forfeiture concerned. Kramer could have appealed that order, *see United States v. Infelise*, 159 F.3d 300, 303 (7th Cir. 1998) (acknowledging Court of Appeals' jurisdiction to hear appeal of orders of forfeiture of substitute assets); *United States v. Hurley*, 63 F.3d 1, 24 (1st Cir. 1995) (acknowledging that defendant may take new appeal directly from post-sentencing order forfeiting substitute property); *United States v. Christunas*, 126 F.3d 765,

768 (6th Cir. 1997) (finding preliminary forfeiture order is appealable by defendant because it "terminates all issues presented by the defendant and leaves nothing to be done except to enforce by execution what has been determined"), but he did not. The Court therefore lacks jurisdiction to entertain his argument now.[11]

Kramer has pointed to no viable avenue for collateral attack on such a judgment. Nor has the Court been able to identify one that would allow the relief Kramer seeks. It is true that under Federal Rule of Criminal Procedure 32.2(e)(1) the Court may at any time enter an order of forfeiture of substitute property or amend an existing order to include substitute property, but even that authority can only be exercised on motion of the Government. In any case, that is not even what Kramer asks for; he asks the Court to invalidate an order forfeiting specific substitute property, not to order additional forfeiture of substitute property. Nothing in Rule 32.2 authorizes the Court to take that action.

For these reasons, the Court will dismiss for lack of jurisdiction Counts 1, 3, and 5, Kramer's claims for return of the entirety of the forfeited property on the grounds that the proceedings were flawed and the Judgment and Order of Forfeiture did not actually accomplish the forfeiture of his property.

### 2. Tucker Act Claims

Kramer brings Counts 7, 8, and 9 under the Tucker Act, 28 U.S.C. § 1491(a)(1), seeking the return of the value of forfeited property exceeding the amount of his $60 million forfeiture judgment. However, as Kramer acknowledges, jurisdiction over claims under the Tucker Act

---

[11] The Court of Appeals in *United States v. Navarro*, 724 F. App'x 489, 491 (7th Cir. 2018), suggests this limitation may not be jurisdictional but instead a matter of waiver or forfeiture. Even if the Court has jurisdiction to consider this question, Kramer cannot succeed on this late challenge to the forfeiture judgment because he has waived that challenge by failing to file a timely notice of appeal.

lies exclusively in the United States Court of Federal Claims.  Thus, this Court has no jurisdiction to entertain Counts 7, 8, and 9, and will dismiss them for lack of jurisdiction.

Further, the Court declines to transfer those claims to the Court of Federal Claims *sua sponte* pursuant to 28 U.S.C. § 1631.  That provision provides, "Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed. . . ."  28 U.S.C. § 1631.  However, this case could not have originally been brought before Court of Federal Claims.  That court views the forfeiture provisions of the Controlled Substances Act ("CSA"), including 21 U.S.C. § 853, as preempting claims under other legal theories to remedy overcollection of CSA forfeiture judgments.  This is because the CSA provides "a specific and comprehensive scheme for administrative and judicial review" that does not include the Court of Federal Claims.  *See Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (internal quotations omitted); *Fischer v. United States*, 96 Fed. Cl. 70, 76 (2011).  Furthermore, Congress has expressly given district courts, not the Court of Federal Claims, "original jurisdiction . . . of any action or proceeding for the recovery . . . of any . . . forfeiture . . . incurred under any Act of Congress," with one inapplicable exception.  28 U.S.C. § 1355; *see Fischer*, 96 Fed. Cl. at 76.[12]

B.   Other Claims

The Court now turns to Kramer's claims that seek only return of the excess proceeds, not invalidation of the forfeiture order:  Counts 2, 4, 6, 10, and 11.

---

[12] Dicta in *Sutton v. United States*, 597 Fed. App'x 890 (2015), suggests the Court of Federal Claims is, indeed, the proper court to hear claims for overcollection of a forfeiture judgment.  However, *Sutton* is an unpublished opinion not involving the CSA, and it did not address the preemptive effect of the specific and comprehensive forfeiture scheme of the CSA, as the Court of Appeals for the Federal Circuit has.  The Court finds the reasoning of the Court of Appeals for the Federal Circuit more persuasive.

        1.      Count 2:  Enforcement of Judgment

In Count 2, Kramer appears to rely on the Court's power to enforce its criminal forfeiture judgment by ordering an accounting to determine whether the judgment has been properly executed and/or fully satisfied.  *See United States v. Carter*, 742 F.3d 440, 445 (9th Cir. 2014) (*per curiam*) (noting court retains jurisdiction to determine amounts paid and amounts owing on restitution award).  The Government has not convinced the Court that it lacks the power to order such an accounting in aid of execution of the monetary forfeiture judgment.  However, that power does not give rise to a civil cause of action and is more appropriately raised in Kramer's criminal case as a motion for an accounting.  Accordingly, the Court will dismiss Count 2 without prejudice to such a motion in Kramer's criminal case.  The Court further directs the Clerk of Court to file the Amended Complaint in Kramer's criminal case, No. 87-cr-40070-JPG, as a motion for an accounting of the collection of Kramer's $60 million forfeiture judgment using the date of November 9, 2017, the date the Amended Complaint was originally filed.  The Court will set a briefing schedule on that motion in the criminal case once it is docketed.

        2.      Count 4:  Rule 41(g)

The Court has already dismissed Kramer's original complaint attempting to allege a claim under Rule 41(g) for the substitute property forfeited in *United States v. Lanier*, No. 87-cr-40070-JLF.  However, after delving further into the facts underlying the forfeiture, it appears the dismissal was based on a misunderstanding of the facts.  Specifically, partly because Kramer and the Government used "Bicycle Club" and "LCP" imprecisely in their pleadings, the Court was under the impression that the Court had actually ordered forfeiture of the Bicycle Club—a business operation which Kramer did not own directly—rather than partnership shares of LCP and the Bicycle Club profits to which partners were entitled by virtue of their partnership interests.  It further relied on Kramer's assertion that the Government had sold the Bicycle Club

when, in fact, court records show that it sold only its shares of the LCP partnership. Thus, the Court concluded that the Government had forfeited, sold, and no longer possessed the forfeited property—the Bicycle Club—so Rule 41(g) could not apply.

In fact, in the end, the Government actually forfeited as substitute property in this case only profits of the Bicycle Club due to LCP partners, which it still retains. Thus, if the forfeiture indeed exceeded the value of Kramer's $60 million forfeiture judgment, Rule 41(g) may apply to remedy the unlawful retention of amounts exceeding an *in personam* forfeiture judgment. *See Fischer v. United States*, 96 Fed. Cl. 70, 78 (2011) (suggesting forfeiture of substitute property that exceeds the value of a criminal forfeiture judgment may give rise to a cause of action under Rule 41(g)). However, it is not inapplicable for the reasons upon which the Court relied in its prior order. For this reason, the Court departs from the "law of the case" doctrine, reconsiders that dismissal with prejudice, and turns to the Rule 41(g) claim.

Kramer faces another hurdle that he does not address at all in his response to the Government's motion to dismiss: the six-year statute of limitations for Rule 41(g) motions. *See United States v. Sims*, 376 F.3d 705, 708-09 (7th Cir. 2004) (holding "the six-year statute of limitations in 28 U.S.C. § 2401(a) is appropriate in such cases, and so we shall borrow it for Rule 41(g) motions"). The order finally terminating Kramer's remaining interest in LCP or its profit distributions from the Bicycle Club occurred on September 24, 2003, with Judge Foreman's Judgment and Order of Forfeiture of substitute property. *See United States v. Christunas*, 126 F.3d 765, 768 (6th Cir. 1997) (finding preliminary forfeiture order terminates all interests of the defendant). Thus, any claim that the substitute property exceeded the value of the $60 million forfeiture judgment and that the excess should have been returned pursuant to Rule 41(g) must have been filed by September 24, 2009. Kramer did not file the instant action until April 2015, more than five years too late.

13

Ordinarily Courts do not dispose of claims on statute of limitations grounds at the motion to dismiss stage because the statute of limitations is an affirmative defense around which a plaintiff need not plead. Therefore, the Court generally will not dismiss a claim on limitations grounds if it appears there is any way, consistent with the plaintiff's pleading, for the claim to be timely such as, for example, by application of the discovery rule or equitable tolling. The discovery rule delays accrual of a Rule 41(g) action until the claimant "was on reasonable inquiry notice" of the forfeiture or when he could reasonably have been expected to be aware of a problem with the forfeiture. *See, e.g., United States v. Wright*, 361 F.3d 288, 290 (5th Cir. 2004) (finding Rule 41(g) claim accrued when claimant knew or should have known of the forfeiture). Similarly, equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if *despite all due diligence* he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450-51 (7th Cir. 1990). However, where the plaintiff fails to proffer any plausible explanation in its response why he has satisfied the statute of limitations, as Kramer has done here, the Court need not invent an argument to save his case for him.

Indeed, in this case, it appears Kramer has no viable argument why he could not have filed his Rule 41(g) within the limitations period. It is clear from the sources his cites in his original motion—various court decisions from 1991 to 2001 describing the ownership of LCP and the Bicycle Club, valuing the Bicycle Club at $150 to $200 million, and estimating its monthly proceeds as over $1 million; 1996 Congressional hearing testimony describing the yearly net income of the Bicycle Club in the early 1990s as in the neighborhood of $20 million; the 1999 sale of the Government's partnership interest in the Bicycle Club for $5 million; a July 2004 arbitration award giving PPA over $93 million for the diminution of its partnership distributions because of the USMS's management of the Bicycle Club—that he should have

14

known, with reasonable diligence, by September 2009 of the information he believes supports his view of the magnitude of his interest forfeited and that the Government has overcollected the $60 million judgment.  Even if he could not have reasonably come to this conclusion before July 2004, the latest item he cites to support his belief, he would have had six years beyond that—up to July 2010—to file a Rule 41(g) motion, but he remained silent until April 2015.

Because Kramer has not pointed to any way, consistent with his pleadings, that his claim could be timely, the Court will dismiss Count 4 as untimely.  However, should Kramer learn in connection with the accounting ordered in connection with Count 2 any new information he could not have reasonably discovered earlier with due diligence showing the Government has overcollected his criminal forfeiture judgment, he may reapply for relief under Rule 41(g) at that time in a separate civil proceeding.

       3.      Count 6:  Equitable Powers

Kramer asserts the Government has waived its sovereign immunity in several of the claims he brings, but he has not cited any authority showing that the Government has actually made such a waiver for civil cases invoking the general equitable powers of the Court.  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").[13]  In the absence of any waiver of the Government's sovereign immunity from the claim in Count 6, the Court must dismiss it.

---

[13] Although *Mitchell* speaks of jurisdiction, sovereign immunity is a non-jurisdictional affirmative defense.  *Wisconsin Valley Imp. Co. v. United States*, 569 F.3d 331, 333 (7th Cir. 2009).

        4.        Count 10:  *Bivens* Claim

In its motion to dismiss, the Government does not mention Kramer's *Bivens* claim alleging the illegal exaction of his property in violation of the Fifth Amendment.  This is not surprising because the Government is not the proper defendant in a *Bivens* claim, which is brought against federal officials in their individual capacities.  *See United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010).  The proper defendants in Count 10 are therefore Eduardo Gonzalez and other unnamed agents of the USMS.  However, there is no evidence in the record that those defendants have ever been served with process, much less within 90 days after the Amended Complaint is filed as prescribed by Federal Rule of Civil Procedure 4(m).  Accordingly, the Court will order Kramer to show cause why Count 10 should not be dismissed without prejudice for failure to timely effect service on the defendants in that claim.

        5.        Count 11:  FTCA Claim

The Government fails to address Kramer's FTCA claim beyond a brief parenthetical stating that Kramer filed his administrative claim after the statute of limitations set forth in 28 U.S.C. § 2401(b) had expired.  This half-hearted argument is not sufficient to convince the Court that Kramer's FTCA's claim as pled in the Amended Complaint should be dismissed on this basis.  Accordingly, the Court declines to dismiss Count 11.

        6.        Calculation of Amounts Due

In light of the other issues addressed in this order and/or put off for another day in another case, it is unnecessary for the Court to determine at this time whether the Government has overcollected on Kramer's $60 million criminal forfeiture judgment.

**III.**    **Conclusion**

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the Government's motion to dismiss this action

16

(Doc. 58);

- **DISMISSES** Counts 1, 3, 5, 7, 8, and 9 **without prejudice for lack of jurisdiction**;

- **DISMISSES** Count 2 **without prejudice**;

- **DISMISSES** Counts 4 and 6 **with prejudice**;

- **ORDERS** Kramer to **SHOW CAUSE** on or before July 2, 2020, why Count 10 should not be dismissed without prejudice for failure to timely effect service. Failure to respond in a timely manner to this order will result in dismissal of Count 10 without prejudice;

- **DIRECTS** the Clerk of Court to file the Amended Complaint in this case (Doc. 48) as "Motion for Accounting" in Kramer's Criminal Case, 87-cr-40070-JPG-002, along with a copy of this order, and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The Court further notes that the landscape of this case has substantially change with entry of this order and has rendered Kramer's pending motion for partial summary judgment and limited discovery (Doc. 85) inappropriate. The Court therefore **DENIES** that motion **without prejudice** and **ORDERS** that the parties shall have 90 days from entry of this order to file dispositive motions on any claims remaining in this case.

**IT IS SO ORDERED.**
**DATED:  June 1, 2020**

                                       s/ J. Phil Gilbert
                                       **J. PHIL GILBERT**
                                       **DISTRICT JUDGE**